## Sego v. Lynch.

(Decided December 17, 1929.)

(As Modified, on Denial of Rehearing, March 28, 1930.)

LAWRENCE S. GRAUMAN for appellant.

HAROLD R. MARQUETTE and J. L. RICHARDSON for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

Appellant was the owner of a Buick automobile when the appellee, Lynch, sought to make a trade with her through her husband as her agent. The trade was to exchange a Cadillac for the Buick with an adjustment of the differences in values as they might be agreed upon. Appellant was owing a balance of $474 on the Buick. It was agreed that its fair and reasonable value was $1,200, making the equity of appellant of the value of $726. Lynch agreed to accept the Buick for $1,200, assuming the payment of the $474, and the $726 was to be applied on the payment, and appellant was to pay $1,074, which satisfied the agreed price of the Cadillac of $1,800. The trade was carried through on this basis. Lynch did not have the Cadillac in his possession. He was trading for it, and the man who claimed to own it went under different names. The $1,074 was turned over to Lynch by the appellant, and he paid it to the man who had the Cadillac, and he also paid to the same man the $726. He assumed the payment of the $474, and executed a mortgage to appellant to guarantee the payment of that sum to the Leyman Motor Company.

Appellant took possession of the Cadillac and turned the Buick over to appellee. In the following month police officers of the city of Louisville took the car from appellant, having learned that it had been stolen by the man who brought it to Louisville, and delivered it to appellant through the arrangements which had been made by appellee. Appellant sought to regain the possession of the Buick by suing out a writ of delivery. A

motion was made by appellee to transfer the case to equity. This motion appears to have been sustained, but the record does not make it clear whether before answer was filed or thereafter. The answer alleged that appellee purchased the Buick from appellant for $1,200, and that it was agreed at the time that appellee should pay $726 to the man who had the Cadillac, and that he should pay $474 to the Leyman Motor Company. Appellee, as it is alleged, paid the $726 to the man who had the Cadillac and he fulfilled his agreement to pay the notes to the Leyman Motor Company as they fell due. The effect of the answer is a denial that appellee sold the Cadillac to appellant. He set up a counterclaim asking that appellant be compelled to execute and deliver to him a bill of sale for the Buick. The answer was controverted by reply with the further affirmative allegations detailing the facts as set out above.

Proof was taken by depositions, and, upon submission, the chancellor rendered a written opinion in which he said, in part:

"As to the merits. Sego and Lynch agree that after the Cadillac was transferred to Sego, Sego came back to Lynch and paid to Lynch (not to Jordon) the $1,074. Sego had already delivered to Lynch the Buick in which Mrs. Sego's equity was $726. These two amounts made up the $1,800 which Sego says his wife was to pay for the Cadillac. That is by the testimony of both witnesses the actions of the parties in going through with the sale were such as were called for by the contract pleaded by plaintiff and not by the contract alleged by defendant. If Sego's contract to buy the Cadillac had been with Jordon, as Lynch claims, Sego would not have paid the $1,074 to Lynch and left Lynch to hand it to Jordon, nor would Lynch have undertaken this responsibility.

"I conclude that plaintiff's contract was with defendant, not with Jordon, and plaintiff, not having received title to the Cadillac, would have the right to rescind in a proper state of case."

The evidence was conflicting on the point determined by the court in the language of the above quotation, but our views coincide with the views of the chancellor; that is, that the contract for the sale of the Cadillac automobile was between appellee and appellant. But he fur-

ther found that the car had been stolen, of which they should have had knowledge, and that neither, therefore, had any rights against the other, and he left them where he found them. On this point the chancellor said: "Sego's contract was with Lynch, but Lynch was performing his part by having Jordon transfer the Cadillac direct to Sego. When Jordon said he was a stranger and would prefer the $1,800 in cash, Sego had enough information to warn a reasonably careful man that the car was probably stolen. Lynch states that he introduced the vendor of the Cadillac to Sego under the name of Roberts. If this is true, there is no question of Sego's knowledge that the title to the Cadillac was not good because the vendor, after being introduced as 'Roberts,' signed the bill of sale as 'Jordon.' That the vendor was introduced to Sego as 'Roberts' is denied by plaintiff. Ingram, the only other person present, is not introduced as a witness."

We disagree with the chancellor that the facts, proven in evidence and mentioned in his opinion, were sufficient to place either Lynch or Sego on notice that the car was stolen. It may not be overlooked that Sego paid out $1,800 in money, or its equivalent, and that Lynch paid out $1,800 in money which it is not reasonable to believe that honest men would have done if they had known the car was stolen. There is nothing to impugn the uprightness of either Lynch or Sego. The mere fact that the car was sold for $1,800, which was probably less than it was worth, was not sufficient to put them on notice that it was a stolen car. We cannot agree with the chancellor that the fact that Jordon requested cash instead of a check, on the ground that he was a stranger, was sufficient to indicate to any one that he had stolen the car. It was testified to by Lynch and denied by Sego that Jordon was introduced as "Roberts," and that he thereafter signed the bill of sale as "Jordon." That fact does not bear any great weight. It is hardly to be expected that a man will recall the name of a stranger that he has just met to the extent of being absolutely certain even a short while after the introduction. Sego may have understood the name as Roberts, although he denies it, and yet when he saw the name signed soon thereafter, it was only natural that he would think that he had misunderstood the name. That is the way that an ordinary person would ordinarily feel about such a matter.

Section 2651b-13, Ky. Stats., Supp. 1928, which is the section of the Uniform Sales Act of the General.

Assembly of 1928, provides that in any sale, unless a contrary intention appears, there is an implied warranty on the part of the seller that in case of a sale he has a right to sell the goods, and that the buyer shall have and enjoy quiet possession as against that which is sold, as against any unlawful claims existing at the time of the sale, and that the goods shall be free at the time of the sale from any charge or incumbrance in favor of any third person not declared or known to the buyer before or at the time when the contract of sale is made.

Under that section of the Statutes there was an implied warranty on the part of the seller that he had title to the property, and that the buyer would be vested with that title when the property was transferred to him.

After the case was transferred to equity, the appellant amended her pleadings and sought to recover the amount of the consideration which she had paid. This relief was denied her. It is unnecessary to determine whether the suit is one for rescission, or one in assumpsit, and for that reason we will not discuss, or decide, the question as to the nature of the action. The case can be maintained for breach of the implied warranty. Additional facts may throw additional light on the transactions between appellant's agent and the appellee. If it should have been established that appellant, through her agent, had guilty knowledge that the automobile had been stolen and he accepted it with such knowledge, and it should have been made to appear that appellee had no such knowledge, appellant would not be in position to insist on a recovery because of his having participated in a criminal act. If it should have been shown that both appellant's agent and appellee had guilty knowledge of the theft, neither would have been entitled to relief in court because of their participation in a criminal act. In the absence of such proof, however, and upon the assumption that one of two innocent parties must suffer, the law is for the appellant.

As she is entitled to recover, the amount of the recovery should be the consideration which she paid for the stolen car, that is, $1,800; but if she recovers the Buick car she must account to appellee for any sum that he may have paid on the lien debt of the Leyman Motor Company and release him from any unpaid balance. If she recovers the possession of the automobile and it is of the value it was when she parted with it and recovers

$1,074, she is made whole when interests and costs are adjusted; but she will be required to make appellee whole on the Leyman Motor Company notes. If she does not obtain possession of the automobile, she is entitled to recover $726 and $1,074, and appellee is entitled to nothing on Leyman notes, as they represented only the difference between $726 and $1,200, the value agreed upon as the value of the Buick car.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.